UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

IN RE:
BRENDA LATOSHIA BELT
Debtor

BCN#: 25-14790
Chapter: 13

CSMC 2021-RPL7 Trust
or present noteholder,
Movant/Secured Creditor,
v.
BRENDA LATOSHIA BELT
Debtor
and
BRIAN A TUCCI
Trustee
Respondents

MOTION FOR ORDER GRANTING RELIEF FROM AUTOMATIC STAY

COMES NOW, CSMC 2021-RPL7 TRUST, its assignee and/or successors in interest, (Movant herein), by Counsel, and alleges as follows:

1. The above-named Debtor filed a Chapter 13 Petition in Bankruptcy with this Court on May 28, 2025.

2. The bankruptcy court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 362; Federal Rule of Bankruptcy Procedure 9014. This matter is a core proceeding.

3. The Movant is the current payee of a promissory note secured by a deed of trust upon a parcel of real property with the address of 307 Wilson Road, Grasonville, MD 21638 and more particularly described in the Deed of Trust dated February 6, 2008 and recorded at Liber 1761 at Folio 419, among the land records of the County of Queen Anne's as:

> ALL THAT CERTAIN PROPERTY SITUATED IN THE COUNTY OF QUEEN ANNE'S, AND STATE OF MARYLAND, BEING DESCRIBED AS FOLLOWS: TAX ID [redacted] AND BEING MORE FULLY DESCRIBED IN A DEED DATED 01/09/1997, AND RECORDED 01/14/1997, AMONG THE LAND RECORDS OF THE COUNTY AND STATE SET FORTH ABOVE, IN DEED BOOK 557, PAGE 537

ALL THAT LOT OF PARCEL OF LAND SITUATE, LYING AND BEING IN THE FIFTH ELECTION DISTRICT OF QUEEN ANNE'S COUNTY, IN THE STATE OF -MARYLAND, WHICH IS DESCRIBED AS FOLLOWS, TO WIT: ALL THAT LOT OR PARCEL OF LAND LYING ON THE SOUTHWEST SIDE OF WILSON ROAD WHICH IS BOUNDED ON THE NORTHWEST BY LAND FORMERLY OF C. S. WILSON, ON THE SOUTHWEST BY THE BOARD OF EDUCATION LANDS AND ON THE SOUTHEAST BY LANDS NOW OR FORMERLY OF ARNITA CORNISH (C.W.C. NO. 1, FOLIO 481), AND MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS, COURSES AND DISTANCES ACCORDING TO A PLAT AND SURVEY THEREOF BY J. R. MCCRONE, JR., INC. DATED JUNE, 1963, RECORDED AMONG THE LAND RECORDS OF QUEEN ANNE'S COUNTY IN LIBER C.W.C. NO. 1, FOLIO 342, CONTAINING 0.561 ACRES OF LAND MORE OR LESS. BEING PARCEL NO. 1 OF THE SAME LAND GRANTED AND CONVEYED UNTO SPANIARD NECK FOUNDATION, INC., BY DEED FROM GENERAL LEE MARSHALL, DATED MARCH 27, 1984, AND RECORDED AMONG THE LAND RECORDS OF QUEEN ANNE'S COUNTY IN LIBER M.W.M. NO. 210, FOLIO 497. A CERTIFICATE OF MERGER OF SPANIARD NECK FOUNDATION, INC., UNTO INTERFAITH HOUSING DEVELOPMENT CORPORATION OF THE MARYLAND EASTERN SHORE, INC., BEING RECORDED AMONG THE CORPORATION RECORDS OF QUEEN ANNE'S COUNTY, MARYLAND, IN LIBER M.W.M. NO. 475, FOLIO 200. THIS CONVEYANCE IS SUBJECT TO THE EXISTING EASEMENTS, RIGHTS OF WAY AND AGREEMENTS FOR ROADWAYS, ELECTRIC TRANSMISSION LINES AND TELEPHONE LINES AND THE SERVICE AND MAINTENANCE                                                      THEREOF. TOGETHER WITH THE BUILDINGS AND IMPROVEMENTS THEREUPON ERECTED, MADE OR BEING, AND ALL AND EVERY THE RIGHTS, ROADS AND/OR ALLEYS, WAYS, WATER, PRIVILEGES, APPURTENANCES AND ADVANTAGES TO THE SAME BELONGING OR IN ANYWISE APPERTAINING.

Copies of the Deed of Trust and Note are attached hereto and made a part hereof by reference.

4.      The entity which has the right to foreclose is: CSMC 2021-RPL7 Trust by virtue of being the holder and owner of the note.

5.      This Movant is informed and believes, and based upon such information and belief, alleges that title to the subject Property is currently vested in the name of the Debtor.

6. The approximate total debt figure, as of August 16, 2025 is $400,462.42(not to be relied upon as the payoff amount). It consists of the following:

a. Principal Balance: $357,373.94
b. Interest: $29,493.45
c. Escrow Advance: $9,989.05
d. NSF Fees: $15.00
e. Recoverable Balance: $3,487.82

7. Movant filed a Proof of Claim which provides a detailed statement of the debt owed, a copy of which is a part of the Court's record, and is incorporated herein and made a part of this Motion for Relief.

8. The Debtor is in default with regard to payments which have become due under the terms of the aforementioned Note and Deed of Trust since the filing of the Chapter 13 Petition.

As of August 16, 2025 the Debtor is due for:

- 3 post petition monthly payments of $2,139.79 each which were to be paid directly to the Movant;
- Suspense: $0.00

9. The Movant has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed but is prevented by the Automatic Stay from going forward with these proceedings.

10. This Movant is informed and believes, and based upon such information and belief, alleges that absent this Court's Order allowing this Movant to proceed with the pending foreclosure, Movant's security interest will be significantly jeopardized and/or destroyed.

11. That Brian A Tucci, Trustee, has been appointed by this Court as the Chapter 13 Trustee in this instant Bankruptcy proceeding.

12. This Movant is informed and believes, and based upon such information and belief, alleges that the Debtor has little or no equity in the property. A copy of the Maryland Department of Assessments and Taxation is attached hereto and made a part hereof by reference.

WHEREFORE, the Movant prays for an Order Granting Relief From the Automatic Stay of 11 U.S.C. § 362(a), and for costs of suit and disbursements of this contested matter, including reasonable attorney's fees, and, for such other relief as the court may deem to be proper.

Dated: 9/12/2025

LOGS LEGAL GROUP LLP
Attorney for Movant

By: /s/Randa S Azzam

William M. Savage, Esquire
Federal I.D. Bar No. 06335
Randa Azzam, Esquire
Federal I.D. Bar No. 22474
Gregory N. Britto, Esquire
Federal I.D. Bar No. 22531
Angela M. Tonello, Esquire
Federal I.D. Bar No. 30084
Counsel for Movant
LAW OFFICES OF LOGS LEGAL GROUP LLP
Mailing Address
10130 Perimeter Parkway, Suite 400
Charlotte, North Carolina 28216
(703) 449-5800 / logsecf@logs.com / 23-295120

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of September, 2025 the following person(s) were served a copy of the foregoing in the manner described below:

Via CM/ECF Electronic Notice:

Brian A Tucci
PO Box 1110
Millersville, MD 21108

Chapter 13 Trustee

Via First Class Mail, Postage Prepaid:

Brenda Latoshia Belt (PRO SE)
307 Wilson Road
Grasonville, MD 21638

Debtor(s)

/s/Randa S Azzam

William M. Savage, Esquire
Federal I.D. Bar No. 06335
Randa Azzam, Esquire
Federal I.D. Bar No. 22474
Gregory N. Britto, Esquire
Federal I.D. Bar No. 22531
Angela M. Tonello, Esquire
Federal I.D. Bar No. 30084
LOGS LEGAL GROUP LLP
Mailing Address
10130 Perimeter Parkway, Suite 400
Charlotte, North Carolina 28216
(703) 449-5800
logsecf@logs.com 23-295120

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
BALTIMORE DIVISION

IN RE:
BRENDA LATOSHIA BELT
Debtor

BCN#: 25-14790
Chapter: 13

CSMC 2021-RPL7 Trust
or present noteholder,
Movant/Secured Creditor,
v.
BRENDA LATOSHIA BELT
Debtor
and
BRIAN A TUCCI
Trustee
Respondents

NOTICE OF MOTION FOR RELIEF FROM STAY
AND HEARING THEREON

CSMC 2021-RPL7 TRUST, and its assignees (Movant herein) by counsel, has filed papers with the Court seeking relief from the automatic stay of 11 U.S.C. § 362 (a) to enable it to obtain an order granting relief from the automatic stay. Your rights may be affected. You should read these papers carefully and discuss them with your lawyer, if you have one in this bankruptcy case. (If you do not have a lawyer, you may wish to consult one.)

If you do not want the court to grant the motion for relief from stay, or if you want the court to consider your views on the motion, then by September 26, 2025 you or your lawyer must file a written response with the Clerk of the Bankruptcy Court explaining your position and mail a copy to:

LOGS LEGAL GROUP LLP, counsel for CSMC 2021-RPL7 TRUST
Mailing Address
10130 Perimeter Parkway, Suite 400
Charlotte, North Carolina 28216

If you mail rather than deliver, your response to the Clerk of the Bankruptcy Court for filing, you must mail it early enough so that the Court will receive it by the date stated above.

The hearing is scheduled for October 20, 2025 at 1:30 PM, in Judge David E Rice's Courtroom, United States Bankruptcy Court, District of Maryland, 101 W. Lombard Street, Courtroom 9-D, Baltimore, MD 21201.

IF YOU OR YOUR LAWYER DO NOT TAKE THESE STEPS BY THE DEADLINE, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE RELIEF SOUGHT IN THE MOTION AND MAY GRANT OR OTHERWISE DISPOSE OF THE MOTION BEFORE THE SCHEDULED HEARING DATE.

DATE: 9/12/2025

/s/Randa S Azzam

William M. Savage, Esquire
Federal I.D. Bar No. 06335
Randa Azzam, Esquire
Federal I.D. Bar No. 22474
Gregory N. Britto, Esquire
Federal I.D. Bar No. 22531
Angela M. Tonello, Esquire
Federal I.D. Bar No. 30084
LAW OFFICES OF LOGS LEGAL GROUP LLP
Mailing Address
10130 Perimeter Parkway, Suite 400
Charlotte, North Carolina 28216
(703) 449-5800 /logsecf@logs.com
23-295120

**CERTIFICATE OF SERVICE**

I hereby certify that on the ___12th___ day of __September_______, ___2025_ the following person(s) were served a copy of the foregoing in the manner described below:

Via CM/ECF Electronic Notice:

Brian A Tucci
PO Box 1110
Millersville, MD 21108

Chapter 13 Trustee

Via First Class Mail, Postage Prepaid:

Brenda Latoshia Belt (PRO SE)
307 Wilson Road
Grasonville, MD 21638

Debtor(s)

/s/Randa S Azzam

William M. Savage, Esquire
Federal I.D. Bar No. 06335
Randa Azzam, Esquire
Federal I.D. Bar No. 22474
Gregory N. Britto, Esquire
Federal I.D. Bar No. 22531
Angela M. Tonello, Esquire
Federal I.D. Bar No. 30084
LOGS LEGAL GROUP LLP
Mailing Address
10130 Perimeter Parkway, Suite 400
Charlotte, North Carolina 28216
(703) 449-5800
logsecf@logs.com 23-295120

# NOTE

BEACH

| February 6, 2008 | EATONTOWN | New Jersey |
|---|---|---|
| [Date] | [City] | [State] |

307 WILSON ROAD, GRASONVILLE, MD 21638
[Property Address]

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means SECURITY ATLANTIC MORTGAGE CO. INC. and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of Two Hundred Eighty Eight Thousand Two Hundred Sixty Dollars (U.S. $288,260.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six And One-Fourth percent (6.250%) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on April 1, 2008. Any principal and interest remaining on the first day of March, 2038, will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at 619 AMBOY AVENUE, EDISON, NJ 08837 or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $1,774.87. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge ☐ Growing Equity Allonge ☐ Other [Specify] ____________

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent (4.000%) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

Brenda Latoshia Beach 2/6/08

- BORROWER - BRENDA LATOSHIA BEACH - DATE -

WITHOUT RECOURSE, PAY TO THE ORDER OF:

SECURITY ATLANTIC MORTGAGE CO. INC.

JOHANNA GREBELSKY
ASSISTANT SECRETARY

*[Sign Original Only]*

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0419, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

DOC. NO. 375160

LIBER 1761 FOLIO 419

RECEIVED
CLERK, CIRCUIT COURT
2008 FEB 15 PM 2:31
QUEEN ANNE'S COUNTY

RECORD & RETURN TO:
QUALITY TITLE & ABSTRACT
TWO INDUSTRIAL WAY WEST
MERIDIAN CENTER I
EATONTOWN [redacted]

| | |
|---|---|
| IMP FD SURE $ | 20.00 |
| RECORDING FEE | 20.00 |
| RECORDATION T | 221.10 |
| TOTAL | 261.10 |
| Res [redacted] | Rcpt [redacted] |
| SM DRC | Blk # 1056 |
| Feb 15, 2008 | 02:32 pm |

[Space Above This Line For Recording Data]

# DEED OF TRUST

BEACH
[redacted]

THIS DEED OF TRUST ("Security Instrument") is made on **February 6, 2008**. The grantor is **BRENDA LATOSHIA BEACH, UNMARRIED** ("Borrower"). The trustee is **KAREN REALE** ("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. [redacted] **SECURITY ATLANTIC MORTGAGE CO. INC.** ("Lender") is organized and existing under the laws of **NEW JERSEY**, and has an address of **619 AMBOY AVENUE, EDISON, NJ 08837** . Borrower owes Lender the principal sum of **Two Hundred Eighty-Eight Thousand Two Hundred Sixty And 00/100** Dollars (U.S.**$288,260.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **March 1, 2038** . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **QUEEN ANNE'S** County, Maryland:

**SEE ATTACHED SCHEDULE A**
**PARCEL** [redacted]

which has the address of **307 WILSON ROAD, GRASONVILLE**, Maryland **21638** ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interest granted to Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interest, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge** . Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges** . Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and

SCHEDULE "A"

Legal Descriptions: All that certain property situated in the County of QUEEN ANNE'S, and State of MARYLAND, being described as follows: TAX ID [redacted] and being more fully described in a deed dated 01/09/1997, and recorded 01/14/1997, among the land records of the county and state set forth above, in Deed Book 557, page 537

All that lot of parcel of land situate, lying and being in the Fifth Election District of Queen Anne's County, in the State of Maryland, which is described as follows, to wit:

ALL that lot or parcel of land lying on the southwest side of Wilson Road which is bounded on the northwest by land formerly of C. S. Wilson, on the southwest by the Board of Education lands and on the southeast by lands now or formerly of Arnita Cornish (C.W.C. No. 1, folio 481), and more particularly described by metes and bounds, courses and distances according to a plat and survey thereof by J. R. McCrone, Jr., Inc. dated June, 1963, recorded among the Land Records of Queen Anne's County in Liber C.W.C. No. 1, folio 342, containing 0.561 acres of land more or less.

BEING Parcel No. 1 of the same land granted and conveyed unto Spaniard Neck Foundation, Inc., by deed from General Lee Marshall, dated March 27, 1984, and recorded among the Land Records of Queen Anne's County in Liber M.W.M. No. 210, folio 497. A Certificate of Merger of Spaniard Neck Foundation, Inc., unto Interfaith Housing Development Corporation of the Maryland Eastern Shore, Inc., being recorded among the Corporation Records of Queen Anne's County, Maryland, in Liber M.W.M. No. 475, folio 200.

THIS CONVEYANCE is subject to the existing easements, rights of way and agreements for roadways, electric transmission lines and telephone lines and the service and maintenance thereof.

TOGETHER with the buildings and improvements thereupon erected, made or being, and all and every the rights, roads and/or alleys, ways, water, privileges, appurtenances and advantages to the same belonging or in anywise appertaining.

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0420, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0421, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments** . All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance** . Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0422, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provision of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation** . The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property** . Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0423, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.**Borrower agrees that should this Security Instrument and the Note are not to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement** . Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i)Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver** . Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers** . The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c)

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0424, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices** . Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17.Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure** : If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in the paragraph 18, including, but not limited to, reasonable

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0425, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a)to all expenses of the sale, including, but not limited to, Trustee's fees of N/A % of the gross sale price and reasonable attorney's fees; (b)to all sums secured by this Security Instrument; and (c)any excess to the person or persons legally entitled to it. Borrower, in accordance with Subtitle W of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this paragraph18 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release** . Upon payment of all sums secured by this Security Instrument, Lender or trustee shall release this Security Instrument without charge to Borrower and mark the Note "paid" and return Note to Borrower. Borrower shall pay any recordations costs.

**20. Substitute Trustee** . Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to paragraph18 of this Security Instrument.

**22. Riders to this Security Instrument** . If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Condominium Rider
☐ Planned Unit Development Rider
☐ Other(s) [specify]
☐ Growing Equity Rider
☐ Graduated Payment Rider
☐ Adjustable Rate Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Brenda Latoshia Beach 2-6-08
- BORROWER - BRENDA LATOSHIA BEACH - DATE -

STATE OF **Maryland**

COUNTY OF **QUEEN ANNE'S**

I Hereby Certify, That on this **6th** day of **February, 2008**, before me, the subscriber, a Notary Public of the State of Maryland, in and for the Jurisdiction aforesaid, personally appeared **BRENDA LATOSHIA BEACH, UNMARRIED**, known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

Kathleen Coligan
Notary Public

My Commission Expires: 11/24/11

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0426, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0427, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

STATE OF Maryland

COUNTY OF QUEEN ANNE'S

I Hereby Certify, That on this 6th day of February, 2008 before me, the subscriber, a Notary Public of the State of Maryland and for the Jurisdiction aforesaid personally appeared Daryl Caposello, the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.

[signature]
Notary Public

My Commission Expires:

JAMES B. JORDAN JR.
NOTARY PUBLIC OF MARYLAND
ANNE ARUNDEL COUNTY
My Commission Expires 12/1/2009

JAMES B. JORDAN JR.
NOTARY PUBLIC OF MARYLAND
ANNE ARUNDEL COUNTY
My Commission Expires 12/1/2009

This is to certify that the within instrument has been prepared by a party to the instrument.

April L. Kugler
Authorized Party
LOAN CLOSER FOR SECURITY ATLANTIC MORTGAGE

When Recorded Return To:
SECURITY ATLANTIC MORTGAGE CO. INC.
619 AMBOY AVENUE
EDISON, NJ 08837
ATTN: NADIRA PERSAUD

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0428, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

# DEED OF TRUST
# REFINANCE STATEMENT

THE MORTGAGORS HEREBY CERTIFY THAT THEY ARE THE ORIGINAL MORTGAGORS, THAT THE PROPERTY WHICH IS THE SUBJECT OF THIS DEED OF TRUST IS THEIR PRINCIPAL RESIDENCE, AND THAT THE AMOUNT SECURED HEREBY WAS BORROWED FOR THE PURPOSE OF REFINANCING AN EXISTING DEED OF TRUST WITH CASTLE POINT MORTGAGE DATED 11/23/2007 AND RECORDED AMONG THE LAND RECORDS OF QUEEN ANNE'S COUNTY IN LIBER 1745, FOLIO 99 IN THE ORIGINAL AMOUNT OF $ 255,000.00 AND THAT THE PRINCIPAL BALANCE DUE UNDER THAT DEED OF TRUST AS OF THE DATE OF THE WITHIN DEED OF TRUST IS $ 254,849.44

Brenda Latoshia Beach
**Borrower Signature**

______________________
**Borrower Signature**

STATE OF MARYLAND, Queen Anne COUNTY SS:

I hereby Certify, that on this 6th day of February 2008, before me, the subscriber, a Notary Public of the State of Maryland, in and for the Queen Anne County, personally appeared

Brenda Latoshia Beach

Known to me or satisfactorily proven to be the person(s) whose name(s) are/is subscribed to the within instrument and acknowledged that he/she/they executed the same for the purpose therein contained.

AS WITNEESS: my hand and notarial seal.

My Commission expires: 11/24/11

Kathleen Colligan
Notary Public

KATHLEEN COLIGAN NOTARY PUBLIC QUEEN ANNE COUNTY, MD

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 1761, p. 0429, MSA_CE58_1975. Date available 02/22/2008. Printed 10/06/2023.

LIBER 1761 FOLIO 429

# State of Maryland Land Instrument Intake Sheet

☐ Baltimore City ☒ County: QUEEN ANNE

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office Only.*

(Type or Print in Black Ink Only—All Copies Must Be Legible)

Space Reserved for Circuit Court Clerk Recording Validation

| | | | | |
|---|---|---|---|---|
| 1 Type(s) of Instruments | ( ☐ Check Box if addendum Intake Form is Attached.) | | | |
| | ☐ Deed | ☒ Mortgage | ☐ Other ______ | ☐ Other ______ |
| | ☐ Deed or Trust | ☐ Lease | | |
| 2 Conveyance Type Check Box | ☐ Improved Sale Arms-Length [1] | ☐ Unimproved Sale Arms-Length [2] | ☐ Multiple Accounts Arms-Length [3] | ☐ Not an Arms-Length Sale [9] |
| 3 Tax Exemptions (if Applicable) Cite or Explain Authority | Recordation | $255,600.00 | | |
| | State Transfer | | | |
| | County Transfer | | | |

| 4 Consideration and Tax Calculations | Consideration Amount | | Finance Office Use Only — Transfer and Recordation Tax Consideration | |
|---|---|---|---|---|
| | Purchase Price/Consideration | $ | | |
| | Any New Mortgage | $ 288,260.00 | Transfer Tax Consideration | $ |
| | Balance of Existing Mortgage | $ 254,849.44 | X ( ) % = | $ |
| | Other: | $ | Less Exemption Amount – | $ |
| | | | Total Transfer Tax = | $ |
| | Other: | $ | Recordation Tax Consideration | $ |
| | | | X ( ) per $500 = | $ |
| | Full Cash Value: | $ | TOTAL DUE | $ |

| 5 Fees | Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|---|
| | Recording Charge | $ 20.00 | $ | |
| | Surcharge | $ 20.00 | $ | Tax Bill: |
| | State Recordation Tax | $ 221.10 | $ | |
| | State Transfer Tax | $ | $ | C.B. Credit: |
| | County Transfer Tax | $ | $ | |
| | Other | $ | $ | Ag. Tax/Other: |
| | Other | $ | $ | |

**6 Description of Property** — SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG ☐ (5) |
|---|---|---|---|---|---|
| [redacted] | | | | | |

| Subdivision Name | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |
|---|---|---|---|---|---|
| | | | | | |

Location/Address of Property Being Conveyed (2): 307 WILSON RD., GRASONVILLE, MD 21638-1159

Other Property Identifiers (if applicable): | Water Meter Account No.:

Residential ☒ or Non-Residential ☐ | Fee Simple ☒ or Ground Rent ☐ | Amount:

Partial Conveyance? ☐ Yes ☒ No | Description/Amt. of SqFt/Acreage Transferred:

If Partial Conveyance, List Improvements Conveyed:

| 7 Transferred From | Doc. 1 - Grantor(s) Name(s) | Doc. 2 - Grantor(s) Name(s) |
|---|---|---|
| | BRENDA LATOSHIA BEACH | |
| | Doc. 1 - Owner(s) of Record, if Different from Grantor(s) | Doc. 2 - Owner(s) of Record, if Different from Grantor(s) |
| | | |

| 8 Transferred To | Doc. 1 - Grantee(s) Name(s) | Doc. 2 - Grantee(s) Name(s) |
|---|---|---|
| | SECURITY ATLANTIC MORTGAGE CO., INC. | |
| | New Owner's (Grantee) Mailing Address | |
| | | |

| 9 Other Names to Be Indexed | Doc. 1 - Additional Names to be Indexed (Optional) | Doc 2 - Additional Names to be Indexed (Optional) |
|---|---|---|
| | | |

| 10 Contact/Mail Information | Instrument Submitted By or Contact Person | |
|---|---|---|
| | Name: MARY MEAD | ☒ Return to Contact Person |
| | Firm: QUALITY TITLE & ABSTRACT AGENCY | ☐ Hold for Pickup |
| | Address: 2 INDUSTRIAL WAY W., MERIDIAN CTR I | |
| | EATONTOWN, NJ 07724 Phone: [redacted] | ☐ Return Address Provided |

11 **IMPORTANT: *BOTH* THE ORIGINAL DEED *AND* A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER**

**Assessment Information**

☐ Yes ☐ No Will the property being conveyed be the grantee's principal residence?

☐ Yes ☐ No Does transfer include personal property? If yes, identify: ______

☐ Yes ☐ No Was property surveyed? If yes, attach copy of survey (if recorded, no copy required).

**Assessment Use Only - Do Not Write Below This Line**

Space Reserved for County Validation

☐ Terminal Verification ☐ Agricultural Verification ☐ Whole ☐ Part ☐ Tran. Process Verification

Transfer Number: | Date Received: | Deed Reference: | Assigned Property No.:

| Year | 20 | 20 | Geo. | Map | Sub | Block |
|---|---|---|---|---|---|---|
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ. Cd. |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | |

REMARKS:

Distribution: White - Clerk's Office
Canary - SDAT
Pink - Office of Finance
Goldenrod - Preparer

DOC. NO. 408227

LIBER 2048 FOLIO 164

RECEIVED
CLERK, CIRCUIT COURT
11 SEP 21 PM 2:27
QUEEN ANNE'S COUNTY

IMP FD SURE $ 40.00
RECORDING FEE 20.00
TOTAL 60.00
Res# Rcpt #
SH RCB Blk # 1120
Sep 21, 2011 02:28 PM

Recording Requested By:
**Bank of America**
Prepared By: **Lori Fitch**

When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

Property Address:
**307 Wilson Rd**
**Grasonville, MD 21638-1159**

9/9/2011

This space for Recorder's use

MIN # MERS Phone #:

# ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **400 NATIONAL WAY, SIMI VALLEY, CA 93065**
all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender: **SECURITY ATLANTIC MORTGAGE CO. INC.**
Made By: **BRENDA LATOSHIA BEACH, UNMARRIED**
Original Trustee: **KAREN REALE**
Date of Deed of Trust: **2/6/2008** Original Loan Amount: **$288,260.00**

Recorded in **Queen Annes County, MD** on: **2/15/2008**, book **1761**, page **419** and instrument number **375160**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on 9/10/11

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: [signature]
**Debbie Nieblas, Assistant Secretary**

State of **California**
County of **Ventura**

On SEP 10 2011 before me, **Y. Jody Yvonne Cabrera, Notary Public**, Notary Public, personally appeared **Debbie Nieblas**
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Y. JODY YVONNE CABRERA
Commission # 1808077
Notary Public - California
Ventura County
My Comm. Expires Aug 1, 2012

Notary Public [signature]
My Commission Expires: 8-1-12

(Seal)

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 2048, p. 0164, MSA_CE58_2262. Date available 09/29/2011. Printed 09/09/2022.

LR - Assignment
Recording Fee 20.00
Grantor/Grantee Name:
BANK OF AMERICA
Reference/Control #:
LR - Assignment
Surcharge 40.00
SubTotal: 60.00
Total: 60.00
03/08/2016 02:32
CC17-CV
#5718376 CC0204 -
Queen Anne's
County/CC02.04.01 -
Register 01

Recording Requested By:
T.D. SERVICE COMPANY

And When Recorded Mail To:
T.D. Service Company
4000 W. Metropolitan Dr.
Suite# 400
Orange, CA 92868

RECORD

Space above for Recorder's use
PHONE#:

# ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, **BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, 1800 TAPO CANYON RD, SIMI VALLEY, CA 93063-0000**, hereby assign and transfer to **SECRETARY OF HOUSING AND URBAN DEVELOPMENT, 451 7TH ST, S.W., WASHINGTON, DC 20410-0000**, all its right, title and interest in and to said Mortgage in the amount of **$288,260.00**, recorded in the State of **MARYLAND**, County of **QUEEN ANNE'S** Official Records, dated **FEBRUARY 06, 2008** and recorded on **FEBRUARY 15, 2008, as Instrument No. ---, in LIBER: 1761, at FOLIO: 419.**
Executed by: **BRENDA LATOSHIA BEACH, UNMARRIED** (Original Mortgagor).
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SECURITY ATLANTIC MORTGAGE CO. INC. ITS SUCCESSORS AND ASSIGNS.** Property Address: **307 WILSON ROAD, GRASONVILLE, MD 21638-0000.**

Date: **FEBRUARY 18, 2016**
**BANK OF AMERICA N.A., S/B/M TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT**

By: ______________________
**Roy Lacey, Authorized Signatory**

State of **OKLAHOMA** }
County of **OKLAHOMA** } ss.

On **FEBRUARY 18, 2016** , before me, **Hailey Woosley**, a Notary Public, personally appeared **Roy Lacey** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

HAILEY WOOSLEY NOTARY # 12005161 EXP. 06/01/16 PUBLIC STATE OF OKLAHOMA

(Notary Name): **Hailey Woosley**
My commission expires: 06/01/2016

Prepare By: **HAILEY B WOOSLEY**

| IMP FD SUR | 40.00 |
| --- | --- |
| RECDG FEE | 20.00 |
| TOTAL | 60.00 |

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 2516, p. 0127, MSA_CE58_2730. Date available 03/11/2016. Printed 09/09/2022.

BOOK: 2516 PAGE: 128

LR - Assignment
Recording Fee 20.00
Grantor/Grantee Name: SECRETERY OF HOUSING AND URBAN DEVELOPME
Reference/Control #: LR - Assignment
Surcharge 40.00
SubTotal: 60.00
Total: 60.00
03/08/2016 02:35
CC17-CV
#5718487 CC0204 - Queen Anne's County/CC02.04.01 - Register 01

RECORD 2nd

Recording Requested By:

And When Recorded Mail To:
**T.D. Service Company**
**4000 W. Metropolitan Dr.**
**Suite# 400**
**Orange, CA 92868**

Space above for Recorder's use

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, **SECRETARY OF HOUSING AND URBAN DEVELOPMENT, 451 7TH STREET, S.W., WASHINGTON, DC 20410-0000**, hereby assign and transfer to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134-0000**, all its right, title and interest in and to said Mortgage in the amount of **$288,260.00**, recorded in the State of **MARYLAND**, County of **QUEEN ANNE'S** Official Records, dated **FEBRUARY 06, 2008** and recorded on **FEBRUARY 15, 2008, as Instrument No. ---, in LIBER: 1761, at FOLIO: 419.**
Executed by: **BRENDA LATOSHIA BEACH, UNMARRIED** (Original Mortgagor).
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR SECURITY ATLANTIC MORTGAGE CO. INC. ITS SUCCESSORS AND ASSIGNS.** Property Address: **307 WILSON ROAD, GRASONVILLE, MD 21638-0000.**

Date: **FEBRUARY 18, 2016**
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT, BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT**

By: ______________________
**Roy Lacey, Authorized Signatory**

State of **OKLAHOMA** }
County of **OKLAHOMA** } ss.

On **FEBRUARY 18, 2016** , before me, **Hailey Woosley**, a Notary Public, personally appeared **Roy Lacey** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

______________________
(Notary Name): **Hailey Woosley**
My commission expires: 06/01/2016

HAILEY WOOSLEY NOTARY PUBLIC # 12005161 EXP. 06/01/16 STATE OF OKLAHOMA

Prepare By: **HAILEY B WOOSLEY**

| IMP FD SUR | 40.00 |
|---|---|
| RECDG FEE | 20.00 |
| TOTAL | 60.00 |

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) SM 2516, p. 0128, MSA_CE58_2730. Date available 03/11/2016. Printed 09/09/2022.

BOOK: 4147 PAGE: 185

IMP FD SURE $40.00
RECORDING FEE $20.00

TOTAL $60.00
Clerk, Cir Ct, QA County
NF Nov 23, 2022 08:54 am

Recording Requested By:
Residential RealEstate Review

When Recorded Return To:

Residential RealEstate Review
Collateral Document Services
3217 S. Decker Lake Drive
Salt Lake City, UT 84119

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Queen Anne's, Maryland**

Date of Assignment: NOV 0 3 2022
Assignor: U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT at C/O SELECT PORTFOLIO SERVICING, INC. 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119
Assignee: CSMC 2021-RPL7 TRUST at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119

Executed By: BRENDA LATOSHIA BEACH, UNMARRIED To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR SECURITY ATLANTIC MORTGAGE CO. INC. ITS SUCCESSORS AND ASSIGNS
Dated: 02-06-2008 Recorded: 02-15-2008 in Book/Reel/Liber 1761 Page/Folio 419 as Instrument No. 375160 In the County of Queen Anne's, State of Maryland.

Property Address: 307 WILSON ROAD, GRASONVILLE, MD 21638

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above named assignee, the said Deed of Trust having an original principal sum of $288,260.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said assignee forever, subject to the terms contained in said Deed of Trust.

IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT
On NOV 0 3 2022

SELECT PORTFOLIO SERVICING, INC. Corporate 1989 SEAL UTAH

By: ____________________
**Rylee Lopez**
**Document Control Officer**
STATE OF Utah
COUNTY OF Salt Lake

On, NOV 0 3 2022, before me, Miguel Bocanegra, a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared Rylee Lopez, Document Control Officer, of U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Miguel Bocanegra

MIGUEL BOCANEGRA
Notary Public State of Utah
My Commission Expires on:
July 05, 2026
Comm. Number: 725590

QUEEN ANNE'S COUNTY CIRCUIT COURT (Land Records) KBH 4147, p. 0185, MSA_CE58_4362. Date available 11/29/2022. Printed 10/09/2023.

**LOAN MODIFICATION AGREEMENT**

This Loan Modification Agreement ("Agreement") is effective May 1, 2019, between BRENDA BEACH, ("Borrower") and Select Portfolio Servicing, Inc., acting on behalf of the owner of the Note, ("Lender"). If Borrower's representations and covenants in Section 1 continue to be true in all material respects, then this Agreement will amend and supplement, as set forth in Section 2, the Note made by the Borrower, dated February 6, 2008, in the original principal sum of $288,260.00 ("Note"). The Mortgage or Deed of Trust ("Security Instrument"), which was entered into as security for the Note, encumbers the real and personal property described in the Security Instrument (defined in the Security Instrument as the "Property"), known as:

307 WILSON ROAD
GRASONVILLE, MD 21638

The Note and Security Instrument are collectively referred to in this Agreement as the "Loan Documents."

1. Borrower Representations and Covenants. Borrower certifies, represents, covenants, and agrees as follows:

   a. Borrower is experiencing a financial hardship, and as a result, (i) is in default under the Note or default is imminent, and (ii) Borrower does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

   b. There has been no impermissible change in the ownership of the Property since Borrower signed the Note.

   c. If requested by Lender, Borrower has provided documentation for all income that they receive.

   d. All documents and information Borrower has provided to Lender in connection with this Agreement, including the documents and information regarding eligibility for this Agreement, are complete, true and correct.

   e. Borrower has made or will make all payments required under a trial modification plan or loan workout plan, if applicable.

   f. The property is neither in a state of disrepair, nor condemned.

   g. Borrower is not a party to any litigation involving the Loan Documents, except to the extent the Borrower may be a defendant in a foreclosure action.

2. The Modification. If Borrower's representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on May 1, 2019 (the "Modification Effective Date") and all late charges that remain unpaid will be waived. Borrower understands that if they fail to make any payments as a precondition to this modification under a workout plan or trial modification plan, this modification will not take effect. The first modified payment will be due on June 1, 2019.

   a. The Maturity Date will be: May 1, 2049.

   b. The modified principal balance of the Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the account associated with the Note. The new principal balance of the Note will be $373,393.11 (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   c. $78,414.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. Borrower will not pay interest or make monthly payments on the Deferred Principal Balance. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $294,979.11. Interest at the rate of 2.500% will begin to accrue on the Interest Bearing Principal Balance as of May 1, 2019 and the first new monthly payment on the Interest Bearing Principal Balance will be due on June 1, 2019. The payment schedule for the modified Note is as follows:



| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 36 | 2.500% | May 1, 2019 | $972.78 | $287.74, which may adjust periodically | $1,260.52, which may adjust periodically | June 1, 2019 | 36 |
| 37 - 48 | 3.500% | May 1, 2022 | $1,131.96 | $287.74 | $1,419.70 | June 1, 2022 | 12 |
| 49 - 60 | 4.500% | May 1, 2023 | $1,299.81 | $287.74 | $1,587.55 | June 1, 2023 | 12 |
| 61 - 72 | 5.500% | May 1, 2024 | $1,474.93 | $287.74 | $1,762.67 | June 1, 2024 | 12 |
| 73 - 84 | 6.500% | May 1, 2025 | $1,656.05 | $287.74 | $1,943.79 | June 1, 2025 | 12 |
| 85 - 360 | 7.500% | May 1, 2026 | $1,842.06 | $287.74 | $2,129.80 | June 1, 2026 | 276 |
| **A final balloon payment on the Interest Bearing Principal Balance of $155,184.25 is due on the Maturity Date.** | | | | | | | |

The Deferred Principal Balance of $78,414.00 will be due as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date. The above terms in this Section 2.c shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

The above terms in this section 2.c shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate. Interest will be charged on unpaid principal until the full amount of Principal has been paid. Borrower will pay interest at a yearly rate of 2.500%.

BALLOON NOTICE. In order to reach an affordable payment, we extended your amortization term, which is the rate or speed by which your mortgage is calculated to be paid off; however, your maturity term, which is the period of time until your mortgage becomes due and payable, could not be fully extended to an equal term. This is because the investor on your account allows us to change your amortization term but does not allow us to change the maturity term to match. As a result of the difference between these two periods, there will be an amount due of $155,184.25 on the date your lien matures on May 1, 2049. The amount due at maturity is in addition to your monthly scheduled payment and the principal forbearance of $78,414.00 that you received as part of your modification.

d. Borrower, has agreed to establish an escrow account to pay for property taxes and homeowner's insurance and pay a monthly escrow payment in the initial amount of $287.74. Borrower,'s total monthly payment of principal, interest and escrow will therefore be equal to $1,260.52. Borrower, acknowledges that the payments attributable to insurance and taxes are determined by the state taxing authorities and insurance companies and therefore, are subject to change from time to time. Borrower, will be notified of any changes.

3. Other Agreements. Borrower and Lender also agree to the following:

a. This Agreement shall supersede any modification, forbearance, trial period plan, or other workout plan that Borrower previously entered into with Lender.

b. The Security Instrument and Note, as modified by this Agreement, are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

c. All terms of the Security Instrument and Note, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Note and Security Instrument.

d. Borrower will be bound by and comply with all covenants, agreements, and requirements of the Note as modified by the Agreement and the Security Instrument, including all requirements to make payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Note and Security Instrument.

e. If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after receipt of the Lender's request, Borrower will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If Borrower fails to do so, Borrower will be liable for any and all loss or damage which the Lender reasonably sustains as a result of Borrower's failure. At Lender's option, this Agreement will be void and of no legal effect upon notice of such loss, misplacement, misstatement, or inaccuracy. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Borrower will not be eligible for a modification.

f. The mortgage insurance premiums due from Borrower, if applicable, may increase as a result of the capitalization, which will result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

g. As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, Borrower agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the lender shall give borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days – depending on state law and other requirements – from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on the Borrower.

h. As of the Modification Effective Date, a buyer of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

i. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

j. If Borrower is in bankruptcy upon execution of this document, Borrower will cooperate fully with Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect, and such terms shall not be modified by this Agreement.

k. If Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

l. In agreeing to the changes to the original Loan Documents as reflected in this Agreement, Lender has relied upon the truth and accuracy of all of the representations made by Borrower(s), both in this Agreement and in any documentation provided by or on behalf of Borrower(s) in connection with this Agreement. If Lender subsequently determines that such representations or documentation were not truthful or accurate, Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

**TAX CONSEQUENCES OF LOAN MODIFICATIONS.** There may be income tax consequences related to this loan modification. Because you will be responsible for paying any income tax due as a result of this loan modification, you may wish to consult a tax advisor before accepting this loan modification.

The Borrower(s) and Lender have signed this Agreement as of the Effective Date.

Brenda Katoshia Beach — 5/28/19

Borrower Signature: Date:

Borrower Signature: Date:

DIGIMAIL MAY 31 2019

Zury Oakey, Doc. Control Officer
Select Portfolio Servicing, Inc. (On behalf of Lender):

6/18/19
Date:

Real Property Data Search ( )

Search Result for QUEEN ANNE'S COUNTY

**View Map** **No Ground Rent Redemption on File** **No Ground Rent Registration on File**

**Special Tax Recapture:** None

**Account Number:** **District -** 05 **Account Identifier** [redacted]

## Owner Information

| | | | |
|---|---|---|---|
| **Owner Name:** | BEACH BRENDA LATOSHIA | **Use:**<br>**Principal Residence:** | RESIDENTIAL<br>YES |
| **Mailing Address:** | 307 WILSON RD<br>GRASONVILLE MD 21638-1159 | **Deed Reference:** | /00557/ 00537 |

## Location & Structure Information

| | | | |
|---|---|---|---|
| **Premises Address:** | 307 WILSON RD<br>GRASONVILLE 21638-0000 | **Legal Description:** | LOT 127/195X154/157<br>AND IMPR N/MD RT 18<br>E/GRASONVILLE |

| Map: | Grid: | Parcel: | Neighborhood: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: |
|---|---|---|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | 0000 | | | | 2025 | **Plat Ref:** |

**Town:** None

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1958 | 1,390 SF | | 24,430 SF | |

| Stories | Basement | Type | Exterior | Quality | Full/Half Bath | Garage | Last Notice of Major Improvements |
|---|---|---|---|---|---|---|---|
| 1 | NO | STANDARD UNIT | SIDING/ | 2 | 2 full | | |

## Value Information

| | Base Value | Value | Phase-in Assessments | |
|---|---|---|---|---|
| | | As of 01/01/2025 | As of 07/01/2025 | As of 07/01/2026 |
| **Land:** | 124,800 | 159,800 | | |
| **Improvements** | 74,600 | 91,200 | | |
| **Total:** | 199,400 | 251,000 | 216,600 | 233,800 |
| **Preferential Land:** | 0 | 0 | | |

## Transfer Information

| | | |
|---|---|---|
| **Seller:** INTERFAITH HOUSING DEVELOPMENT | **Date:** 01/14/1997 | **Price:** $10,000 |
| **Type:** NON-ARMS LENGTH OTHER | **Deed1:** SM /00557/ 00537 | **Deed2:** |
| **Seller:** MARSHALL, GENERAL L AND ETHA G | **Date:** 03/27/1984 | **Price:** $20,000 |
| **Type:** NON-ARMS LENGTH OTHER | **Deed1:** MWM /00210/ 00497 | **Deed2:** |
| **Seller:** | **Date:** | **Price:** |
| **Type:** | **Deed1:** | **Deed2:** |

## Exemption Information

| **Partial Exempt Assessments:** | **Class** | 07/01/2025 | 07/01/2026 |
|---|---|---|---|
| **County:** | 000 | 0.00 | |
| **State:** | 000 | 0.00 | |
| **Municipal:** | 000 | 0.00\|0.00 | 0.00\|0.00 |

**Special Tax Recapture:** None

## Homestead Application Information

**Homestead Application Status:** Approved 06/02/2014

## Homeowners' Tax Credit Application Information

**Homeowners' Tax Credit Application Status:** No Application **Date:**

Give Feedback